IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RONALD EUGENE MCKAY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-CV-01206-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Ronald Eugene McKay, Jr., seeks review of the Administrative Law Judge's decision denying his application for Social Security Disability Insurance (SSDI) benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

**I.   Background**

McKay filed an application for SSDI benefits on January 25, 2011, alleging an onset date of October 27, 1995. [Tr. 124]. McKay's date of last insured was June 30, 2000. [Tr. 60]. The record contains ambiguous evidence suggesting that this was McKay's second application for SSDI benefits, his first application for benefits having been made in 1995 or 1996. [Tr. 127]. McKay notes that "[t]he 1996 application apparently allowed a closed period of disability that ran to April 1997 but that cannot be affirmatively stated one way or another as the record is incomplete." [Doc. 9, p. 2].

1

McKay's 2011 application for SSDI benefits requests benefits due to ongoing health problems arising from injuries sustained due to a sixteen foot fall McKay suffered in 1995. McKay's claims that he suffers from ongoing medical conditions including: head and neck injury with LeForte II fracture treated with closed reduction and arch bar stabilization; headaches from treatment; distal comminuted right radius fracture treated with open reduction and internal fixation, external fixation and release of the carpal tunnel, with chronic right wrist pain with expected degenerative changes of the right wrist and loss of motion; injury to his left upper extremity that is permanent in nature, a severe comminuted fracture of the radial head at the elbow which was treated with resection, injury to the distal radial ulnar joint which had been treated surgically with ulnar shortening and arthroplasty; severe acetabular fracture with posterior dislocation of the left hip with total hip arthroplasty; and medical chronic low back pain. [Tr. 446-49].

Upon review of the record, the ALJ found that McKay suffered from the following severe impairments through the date of last insured: status post total left hip arthroplasty, status post reduction and pinning of the left wrist, status post open reduction and internal fixation of the right radius, status post right carpal tunnel release, and obesity. [Tr. 14].

In light of McKay's severe impairments, the ALJ noted that McKay had the Residual Functional Capacity (RFC):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) involving lifting and/or carrying 20 occasionally and 10 pounds frequently; standing and/or walking two hours in an eight-hour workday; and sitting six hours in an eight-hour workday. He must be able to alternate between sitting and standing at least every 30 minutes. He could occasionally climb ramps or stairs, but never use ladders, ropes or scaffolds or balance, kneel crouch or crawl. He can

2

> occasionally stoop but he must avoid overhead reaching and avoid exposure to extreme cold. The claimant could frequently finger and frequently handle.

[Tr. 15]. To determine McKay's RFC, the ALJ reviewed McKay's medical records from the time immediately following his fall, as well as the medical records through 2000 that addressed McKay's treatment and improvement from his injuries. [Tr. 15-22]. She also considered McKay's testimony at the administrative hearing. *Id.* The ALJ then concluded based upon the evidence and vocational expert testimony that jobs existed in significant numbers in the national economy that McKay could perform, including work as a document preparer, weight tester, and order clerk/food beverage. [Tr. 22-23]. The ALJ subsequently denied McKay's request for SSDI benefits. *Id.*

## II. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

McKay contends that the ALJ erred in (1) failing to consider the opinion evidence of Dr. Brent Koprivica, (2) failing to follow the medical improvement standard of review,

and (3) failing to resolve a conflict between the vocational expert's testimony and McKay's functional capacity. The Court finds that the medical evidence indicating McKay's improvement in the years following his fall contain substantial evidence to support the ALJ's denial of benefits.

Dr. Koprivica examined McKay in February 1999 in connection with McKay's claim for workers' compensation. [Tr. 438-50]. At the end of the evaluation, Dr. Koprivica concluded the following:

> In my opinion, Mr. McKay should be limited to light physical demand level of activity. I would further restrict him from doing any repetitive activities with his upper extremities involving his wrists, hands, forearms or elbows. He should have limited standing or walking activities to one hour as a maximum one-time interval. He should be allowed postural change flexibility from sitting to standing or walking as needed. In general, captive sitting should be limited to one-hour intervals. He should avoid any frequent or constant bending at the waist, pushing, pulling or twisting. He should avoid sustained or awkward postures of the lumbar spine. He should do no type of climbing activities. He should avoid squatting, crawling or kneeling.

[Tr. 449]. McKay contends that the ALJ erred in not assigning weight to this opinion, despite discussing Dr. Koprivica's findings on physical examination.

The Court finds that the failure of the ALJ to assign specific weight to Dr. Koprivica's conclusions constitutes harmless error. The ALJ discussed Dr. Koprivica's evaluations at length in her decision. [Tr. 17, 19]. She then evaluated McKay with an RFC which encompassed Dr. Koprivica's conclusions that McKay should be limited to light physical activity, have limited standing or walking, be allowed postural change flexibility, and avoid squatting, crawling, or kneeling. [Tr. 15, 449]. The ALJ's decision

4

not to include Dr. Koprivica's proposed limitations on McKay's ability to complete repetitive activities with his upper extremities is supported by other evidence of the record indicating that McKay has good hand and wrist mobility. [Tr. 18, 403]. As such, the ALJ's failure to assign the opinion weight "does not require reversal since it had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

Substantial evidence of the record supports the ALJ's RFC determination. The record contains treatment records and opinions from a significant number of doctors indicating that McKay improved dramatically after suffering extensive injuries in his 1995 fall. Though McKay claims continuing disability based in part on pain in his left hand, wrist, and elbow, a March 1997 EMG of the area was within normal limits. [Tr. 18, 369]; *see Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) ("subjective pain complaints are not credible in light of objective medical evidence to the contrary"). A physical examination revealed no motor loss in McKay's left hand or wrist and showed good grip strength. [Tr. 18, 403]. In April 1997, McKay's orthopedic surgeon observed that he could lift up to 25 pounds. [Tr. 18, 414]. His lower body also exhibited marked improvement. In February 1995, McKay was observed with 5/5 strength in his lower extremities. [Tr. 446]. In April 1997, his doctor observed that he had normal gait. [Tr. 17, 369]. McKay's orthopedic surgeon reported in February 1997 that his hip was "virtually pain free," and he received very little treatment for hip pain thereafter through his date of last insured. [Tr. 17, 715]; *see Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain

5

medications."). McKay took no prescription medication from at least January through April 1997, and in February 2000, McKay's consultative physician recommended treatment with only over-the-counter pain medication. [Tr. 19, 368, 1024].

McKay next contends that the ALJ erred in failing to follow the medical improvement standard of review. He argues that the ALJ implicitly reopened McKay's prior application for disability benefits when she considered evidence from the same time period. However, McKay did not present any evidence of the prior application, nor did he mention his past application or receiving benefits during the hearing. As such, the ALJ had no basis to reopen McKay's previous application for benefits, and reason to apply the medical improvement standard or review in lieu of the typical five step process to determine disability.

McKay finally argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to resolve a conflict between the vocational expert's testimony and the job characteristics set out by the Dictionary of Occupational Titles (DOT) and companion publication Select Characteristics of Occupations (SCO). McKay notes that his RFC stated that he was limited to "avoiding overhead reaching." [Tr. 15]. The vocational expert then found that given McKay's limitations he would be able to perform jobs including that of a document preparer, weight tester, and order clerk/food beverage. [Tr. 23]. McKay argues that according to the SCO, all three jobs require frequent reaching, defined as "extending hand(s) and arm(s) in any direction." *Selected Characteristics of Occupations*, 341, 199, 335, United States Department of Labor, Germania Publishing (2008).

While the SCO indicates that some document preparer, weight tester, and order clerk/food beverage positions will require overhead reaching, its inclusion in the SCO does not mean that overhead reaching is a requirement of all positions within those job classifications. "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). The vocational expert specifically noted that she had supplemented her testimony "based on [her] education, training and experience, particularly regarding the need for . . . overhead reaching." [Tr. 56]. As such, there is substantial evidence to support the ALJ's conclusion that McKay could perform work existing in significant numbers in the national economy. [Tr. 23].

IV. **Conclusion**

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: November 24, 2014
Jefferson City, Missouri